Filed 9/20/22  P. v. Wollett CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PATRICK OREN WOLLETT,<br><br>    Defendant and Appellant. | 2d Crim. No. B313877<br>(Super. Ct. No. F411505002)<br>(San Luis Obispo County) |

In 2019, Patrick Oren Wollett filed a petition for resentencing on his second degree murder conviction under Penal Code[1] section 1172.6 (former § 1170.95),[2] which was enacted pursuant to Senate Bill No. (SB) 1437.  After the trial court erroneously denied the petition on the ground that SB 1437 was unconstitutional, Wollett appealed and we reversed and

---

[1] All statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

remanded.  On remand, the trial court once again summarily denied the petition.  The court found among other things that the facts set forth in our prior opinion reversing Wollett's first degree murder conviction were sufficient to prove that he could still be convicted of either felony murder or implied malice murder.

Wollett contends, and the People correctly concede, that the court erred in denying the petition without issuing an order to show cause and holding an evidentiary hearing.  It is clear that the court—in apparent reliance on our subsequently depublished decision in *People v. Garcia* (previously published at 57 Cal.App.4th 100 (*Garcia*))—erroneously weighed the evidence and made credibility determinations in finding that Wollett could still be found guilty of second degree murder.  It is also clear from the record that Wollett was not tried or convicted on a felony-murder theory, but rather was tried solely on the now-invalid theory that the murder was a natural and probable consequence of the assault.  Moreover, assault with a deadly weapon cannot provide the basis for a conviction of section degree felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.)  Accordingly, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY[3]

Wollett, codefendant Chad Westbrook, Sarah Lonsinger– Rey (Rey), and Hope Tanore, lived together in Wollett's trailer. Rey had been engaged to Wollett's brother.  Tanore was Westbrook's sister.  The murder victim, Joshua Houlgate, was a

---

[3] The relevant facts are recited from our 2012 unpublished opinion reversing his first degree murder conviction on direct appeal.  (*People v. Wollett* (Feb. 16, 2012, No. B224204) [nonpub. opn.])

friend of Westbrook. For several days prior to the shooting, they all consumed considerable amounts of methamphetamine.

On the evening of December 5, 2007, Wollett, Westbrook, Rey and Tanore went to a bar where they were later joined by Houlgate. Houlgate left the bar alone. The others drove back to their trailer in Tanore's car. Rey fell asleep on a couch. Westbrook, Wollett and Tanore went into a bedroom.

Wollett's friend Brad McCormick came over to visit. After a while, Wollett asked McCormick to leave, stating to McCormick that "something's going to happen. I want you to leave." As McCormick walked away from the trailer, Wollett said something to the effect that he "may be going to jail for the rest of my life."

Tanore received a telephone call from Houlgate at approximately 1:30 a.m. He said he would like to come to the trailer if Tanore would give him a ride home. Tanore agreed and told Wollett and Westbrook that Houlgate was coming over. Houlgate arrived at the trailer 20 minutes later and began socializing with Westbrook, Wollett and Tanore. Houlgate brought some methamphetamine with him. At approximately 3:00 a.m., Houlgate went into the living room where Rey was sleeping. He woke her up and they engaged in sexual intercourse. Afterwards, they fell asleep on a mattress on the floor. Wollett was upset at Rey and Houlgate for having sex because she had been engaged to Wollett's brother.

Tanore left the trailer at approximately 4:00 a.m. She drove her car to the street and was picked up by a friend. Shortly thereafter, a witness saw Wollett sitting in Tanore's car with the motor idling. At about the same time, Wollett sent a text message to friend Susan Meszaros stating that he "may need help soon. Be there for me."

At approximately 5:00 a.m. on December 6, the sleeping Houlgate and Rey were awakened when Westbrook and Wollett began hitting them with a baseball bat and a metal object. They protected themselves as best they could and, although injured, were able to stand up. At this time, Westbrook was standing near Houlgate holding a shotgun he had obtained from somewhere in the trailer. The shotgun had earlier been brought to the trailer by Wollett from the home of a mutual friend, Tyler Strohl, before the events of December 5 had begun. Wollett was standing near Rey. Houlgate ran for the sliding door and Westbrook shot him. Westbrook reloaded and pointed the shotgun at Rey who begged him not to shoot her. Westbrook dropped the shotgun without firing and ran out the back door of the trailer. Wollett ran out the front door.

Neighbors heard a bang, came to investigate, and found Houlgate lying in the parking lot in front of the trailer. Houlgate died at the scene from a shotgun wound to his chest. Rey suffered two broken bones in her foot and other injuries. Houlgate also had injuries from blunt force trauma. One injury was consistent with being hit with a baseball bat. Houlgate's blood was found on the pillow case and on Wollett's jeans. There was a trail of blood from the trailer door to where Houlgate fell.

Within minutes after the shooting, Wollett called his friend Strohl, and left messages saying he needed help and was on the run. Strohl had a Remington shotgun which had been taken from his home a day or two earlier. Wollett had visited Strohl during that period and knew he had a shotgun. When Wollett and Strohl talked later in the day, Wollett told Strohl that "shit happened; shit went down." Wollett told Strohl that the shotgun had been taken care of. Wollett also called friends Susan Meszaros and Chelsea Gordon asking for help. At 8:00 a.m.,

4

Wollett and Westbrook went to the home of Chelsea Gordon's mother to wait for Chelsea. Westbrook also called a friend to ask for a ride.

Recordings of two conversations between Wollett and Westbrook after their arrest were admitted at trial. During the first conversation, Wollett stated, "I wasn't the shooter. I'm not gonna say who anyone was, I don't know, dude." Westbrook stated, "The gun went off. Where it come from, I don't know. He had it?" During the second conversation, Wollett stated, "I told them, you know, what happened, you know, there was a struggle and you brought the shotgun and say, you know, [unintelligible] because you know, my brother's fiancé—you know, they were doin' it in here, grabbed me [unintelligible], the shotgun [unintelligible] . . . you're a goner, and I grabbed the closest thing I had to me, a bat, and, you know, and then there was a struggle, with the shotgun, it all happened real fast."

During the investigation, a Remington shotgun shell was found in Westbrook's residence, and a 25-inch metal pipe was found in Tanore's car. In September 2008, a Remington shotgun and a baseball bat were found a few hundred yards from the trailer.

A jury subsequently convicted Wollett of first degree murder (§§ 187, subd. (a), 189) and assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found true allegations that Wollett personally inflicted great bodily injury in committing the assault (§ 12022.7, subd. (a)), that he personally used a deadly weapon in committing the murder (§ 12022, subd. (b)), and that a principal was armed with a firearm in committing the murder (§ 12022, subd. (a)(1)). Wollett was sentenced to an aggregate term of 32 years to life in state prison.

5

On appeal, we reversed Wollett's first degree murder conviction due to instructional error regarding the natural and probable consequences doctrine of accomplice liability. (*People v. Wollett, supra*, B224204.) The prosecution was given the option of either retrying Wollett for first degree murder or accepting a modification of the judgment to reflect a conviction of second degree murder. (*Ibid*.) After the prosecution announced that it would not retry Wollett for first degree murder, the trial court resentenced appellant for second degree murder and assault with a deadly weapon to an aggregate term of 23 years to life in state prison.

Following the enactment of SB 1437, appellant filed a petition for resentencing pursuant to section 1172.6. After the trial court erroneously denied the petition on the ground that SB 1437 was unconstitutional, we reversed and remanded for the trial court to consider the merits of the petition. (*People v. Wollett* (Aug. 24, 2020, No. B299129) [nonpub. opn.].)

On remand, the trial court appointed counsel to represent Wollett. In its opposition, the prosecution contended the petition should be summarily denied because the facts set forth in our opinion reversing Wollett's first degree murder conviction are sufficient as a matter of law to prove beyond a reasonable doubt that appellant was guilty of murder under a theory of implied malice, which remained valid under the current law. The trial court agreed with the prosecution and denied the petition without issuing an order to show cause or holding an evidentiary hearing. Although appellant's first degree murder conviction had been reversed on direct appeal, the trial court highlighted our opinion's statement that Wollett was "'an active participant in the planning and execution of the assault'" and deemed it "irrefutable" from the evidence that appellant was a major

6

participant in the underlying assault who acted with reckless indifference to human life, such that he could still be convicted of murder under the current law. The court further found that the facts set forth in our prior opinion constituted "overwhelming evidence" that Wollett could still be convicted of murder on a theory of implied malice because he "was proven to be a major participant in the brutal attack of two sleeping victims." The court added that "[w]hile [the] defense argues that the Court should accept the assertions in the petition as true unless the facts in the record conclusively refute them as a matter of law, this Court finds that the facts in the petition are conclusively refuted."

## DISCUSSION

Wollett contends the trial court erred in summarily denying his section 1172.6 petition for resentencing instead of issuing an order to show cause and holding an evidentiary hearing. The People concede the issue and we accept that concession.

SB 1437 amended the felony murder rule and eliminated the natural and probable consequences doctrine as a means of proving murder. (Stats. 2018, ch. 1015.) The bill was enacted "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats., 2018, ch. 1015, § 1, subd. (f).) Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), the defendant is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting, or soliciting the killer, or if the person "was a major participant in

7

the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§189, subd. (e)(3).)

SB 1437 also provides a remedy for persons previously convicted of felony murder or murder under the natural and probable consequences doctrine. Section 1172.6 permits an individual to petition the trial court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of murder because of SB 1437's changes to the definition of the crime. Such a petition must include: "(A) A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1).)

If the petition contains all required information, section 1172.6, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 961, italics omitted (*Lewis*).)

In assessing whether the requisite prima facie showing has been made, the trial court looks at "documents in the court file or otherwise part of the record of conviction that are readily ascertainable [including] the complaint, information or

8

indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, abrogated on another point in *Lewis*, *supra*, 11 Cal.5th at p. 962.) The trial court may also consider the appellate opinion as part of the record of conviction. (*Lewis*, at p. 972.) Our Supreme Court has cautioned, however, that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all [the] answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*; see also *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*), abrogated on another point in *Lewis*, at p. 963.) [T]he trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*Drayton*, at p. 968; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811-815 (*Duchine*).)

"If, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause." (*Drayton*, *supra*, 47 Cal.App.5th at p. 968.) If an order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (*Id.*, subd. (d)(2)), the prosecution has the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing (*Id.*, subd. (d)(3)). The petitioner also has

the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid.*) It is only during this phase that the court may weigh the evidence in reaching a decision. (*Duchine, supra*, 60 Cal.App.5th at pp. 811-815.)

The parties agree that Wollett's petition stated a prima facie case for relief and that the trial court thus erred in denying the petition without issuing an order to show cause and holding an evidentiary hearing. Wollett's petition alleged among other things that he was convicted of murder under the natural and probable consequences doctrine, and that he could not now be convicted of murder under the recent changes to sections 188 and 189. In opposing the petition, the prosecution relied on our prior opinion in *Garcia*, in which we erroneously held that trial courts are *not* required to accept the allegations in a section 1172.6 petition as true.[4] Because the court considered only the facts set forth in our prior appellate opinion in reaching its conclusion and nothing in that opinion refutes the allegations set forth in Wollett's petition as a matter of law, the trial court erred in summarily denying the petition.

---

[4] After we issued our published opinion in *Garcia*, the Supreme Court granted review and deferred the matter pending the court's decision in *Lewis*. After *Lewis* was decided, the court ordered our prior opinion depublished and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of *Lewis* and Senate Bill 775. We subsequently issued an unpublished opinion reversing the trial court's order denying Garcia's petition for resentencing and remanded to the trial court with directions to issue an order to show cause and hold an evidentiary hearing as provided under section 1172.6. (*People v. Garcia* (Mar. 3, 2022, B300163 [nonpub. opn.].)

As the parties note, Wollett was not charged with felony murder and the jury was not instructed on that theory. The trial court nevertheless found that Wollett could still be found guilty of felony murder because the record contains "irrefutable" and "overwhelming evidence" to support a finding that he was a major participant in the underlying assault who acted with reckless indifference to human life. Wollett, however, cannot be convicted of second degree felony murder because the underlying felony was an assault. (*People v. Chun*, *supra*, 45 Cal.4th at p. 1200.) Moreover, it is clear that the court impermissibly weighed the evidence and made factual findings in reaching its result. Accordingly, we reverse and remand for an evidentiary hearing under subdivision (d) of section 1172.6. We express no opinion whether Wollett is entitled to relief following the hearing. (*Drayton*, *supra*, 47 Cal.App.5th at p. 983.)

For purposes of remand, we note that the court also found that Wollett could still be found guilty of second degree implied malice murder. Although the court impermissibly weighed the evidence in making this finding, our Supreme Court has recognized that second degree implied malice murder was not eliminated by SB 1437. (*People v. Gentile* (2020) 10 Cal.5th 830, 850.) "Though [SB 1437] abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged. (§ 188.)" (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) One harbors implied malice when committing an act that is dangerous to life, knowing that it endangers the life of another, and does so with a conscious disregard for life. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 106-107.) Accordingly, "notwithstanding [SB] 1437's elimination of natural and probable consequences liability for second degree

11

murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile*, at p. 850.) The showing necessary for a conviction of implied malice murder is thus greater than the showing required for a conviction of felony murder.

## DISPOSITION

The order denying Wollett's section 1172.6 petition is reversed. The matter is remanded for the trial court to reappoint counsel, issue an order to show cause, and conduct an evidentiary hearing in accordance with section 1172.6, subdivision (d).

NOT TO BE PUBLISHED.

PERREN, J.*

I concur:

GILBERT, P.J.

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

YEGAN, J., Dissenting:

I respectfully dissent. The California Supreme Court has expressly stated that before an evidentiary hearing is required on a Penal Code section 1172.6 petition for resentencing, a trial court may summarily deny the petition: "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations of the petition," then "the [trial] court is justified in making a credibility determination adverse to the petitioner."'" (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) This is precisely what happened here, and the trial court stated that the record "conclusively refutes" the petitioner's allegations. The trial court judge who ruled on the 1172.6 petition (Honorable Dodie Harmon) also was the trial court judge who presided over petitioner's jury trial. If anyone in the world should know and understand the underlying facts, this trial court judge should know. Reversal will not produce a more favorable outcome and an evidentiary hearing is an idle act.

It does not matter that the Attorney General has conceded that an evidentiary hearing is required. We are not required to accept this concession. The "on-line" prosecutor, the District Attorney of San Luis Obispo County, is not in agreement. It also does not matter that the People's original trial theory is now inappropriate. The trial court expressly stated that petitioner could now be convicted as a direct aider/abettor on an implied malice theory. The uncontested facts in the record support this trial court finding. Petitioner had a motive to kill the victim. The victim had just engaged in sexual intercourse with the former fiancé of petitioner's brother. Petitioner brought a loaded shotgun to the scene of the homicide shortly before the murder. Petitioner had a third party friend leave the scene of the murder saying that "something's going to happen" and he "may be going

to jail for the rest of [his] life." He told another friend to be ready to "help" him soon. Petitioner and co-defendant Westbrook repeatedly and "brutally" beat the murder victim and the former fiancé of petitioner's brother, with a baseball bat and a metal object. Westbrook then used the shotgun brought by petitioner to the scene of the murder, to shoot the victim in the chest. The victim died from this shotgun wound. Petitioner and Westbrook fled, and petitioner told a friend that he was "on the run" and that the "shotgun had been taken care of."

This factual predicate, heard by the trial court at the jury trial, shows implied malice as a matter of law, and it "refutes" petitioner's section 1172.6 allegations in the petition. The judgment (order denying the petition) should be affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

2

Dodie A. Harman, Judge
Superior Court County of San Luis Obispo
_____

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.